DIECKERHOFF *et al. v.* ROBERTSON, Collector.

*(Circuit Court, S. D. New York.* November 25, 1890.)

CUSTOMS DUTIES—CLASSIFICATION—"PINS, SOLID HEAD OR OTHER."

"Mourning pins," "hat pins," "bonnet pins," "shawl pins," being articles composed of a steel or hardened-iron shank, varying in length according to the specific designation of the article, from one inch to five inches, pointed at one end, and having a round or cut head of glass or jet, either polished or dull, and "safety pins," being an article composed of brass, having a shank of about one inch and a quarter in length, the point being protected by a shield or guard of the same material, are "pins, solid head or other," dutiable at 30 per cent. *ad valorem* under Schedule C of the tariff act of March 3, 1883, (Tariff Ind. par. 209,) and not "manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured," dutiable at 45 per cent. *ad valorem,* (same schedule, Tariff Ind. par. 216.)

At Law.

Action to recover back duties alleged to have been illegally exacted by the defendant, collector of the port of New York. The goods involved in the present suit were imported by the plaintiffs from Germany and England in 1883 and 1884, and were invoiced in the English and German languages as "mourning pins," "hat pins," "bonnet pins," "shawl pins," and "safety pins," and were classified by the collector as to the mourning, hat, bonnet, and shawl pins as "manufactures of glass and steel," dutiable at 45 per cent. *ad valorem,* under Schedule C of the tariff act of March 3, 1883, (Tariff Ind. par. 216,) and as to the safety pins as "manufactures of brass," dutiable at 45 per cent. *ad valorem,* under the same schedule and paragraph. The plaintiffs duly protested in the case of each entry, claiming the articles to be dutiable at 30 per cent. *ad valorem,* under the provision of Schedule C of said tariff, (Tariff Ind. par. 209,) as "pins, solid head or other," and duly appealed from the decision of the collector to the secretary of the treasury, who affirmed the classification of the collector. The plaintiffs' witnesses gave testimony showing that the articles in question, with the exception of the safety pins, were manufactured of steel or hardened iron, with glass or jet heads, the mourning pins varying in length from one to two inches, the shawl pins being somewhat longer, and the hat pins reaching, as to some of the articles included in the invoices, a length of five inches; that the mourning pins were used for the purpose of pinning articles of wearing apparel of black or dark colors; that the shawl pins were used for fastening ladies' shawls or belts; and that the hat or bonnet pins were used to fasten ladies' hats or bonnets upon the head; that the safety pins included in the invoices were an article of brass having a sharpened shank of about one and a quarter inches in length, furnished with a shield or guard of the same material, not having strictly any head at all, but used for many of the purposes, in fastening the clothing of children and adults, to which the ordinary pin of wholesale and retail trade was used. The plaintiffs also produced a number of witnesses from the wholesale trade in the city of New York, who testified that the general designation of "pins," as understood in trade and commerce in this

country, at and immediately prior to the passage of the tariff act of March 3, 1883, included all the articles in the plaintiffs' invoices. In support of his classification of the merchandise for duty, the defendant collector introduced the evidence of a number of representatives of the leading American manufacturers of the ordinary "*ne plus ultra*" or "adamantine" pin, known in the trade at the time of the passage of said tariff act, which article was shown to have been designated as "pins," with the further definition of "*ne plus ultra*," "adamantine," etc.; that this article was composed of brass or iron wire about one inch in length, made by machinery, having a sharpened point and a solid head made from the same piece of wire as the pin itself; that these pins were commonly white, but that there was a class of them known as "jet pins," or "mourning pins," made in the same way, and of the same sizes, but coated with black japan; that the *ne plus ultra* and adamantine pins came stuck upon papers, and were sold on such papers; that an article essentially the same as the American *ne plus ultra* pin was imported from England, and sold in this market as *ne plus ultra* pins of various makes; that there was also known to the trade, at that time, an article called a "German pin," being made of brass wire, and having a head composed of a fine wire coil about the blunt end of the pin, and consequently not being solid headed. The defendant also produced a number of witnesses in the commission and notions trade, who testified that the trade term, "pins," designated primarily the *ne plus ultra* or adamantine pin, as commonly sold in the wholesale and retail trade. These witnesses admitted, on cross-examination, that different varieties of brass and iron wire pins, made by machinery and having solid heads, from the diminutive "Lill pin," of not more than one-half an inch in length, to a brass-wire solid-headed shawl pin of three inches in length, and the solid-headed wire jet pins, or mourning pins, last above referred to, were included, in their opinion, in the general trade term of "pins." The safety pins were shown to have been also known in the trade by the names of "nursery pins," "diaper pins," and "toilet pins."

*Edgar Ketchum* and *Edward Hartley*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge, (*charging jury.*) *Gentlemen of the Jury:* In the tariff act of 1883 there is a schedule, lettered C, and headed "Metals," including a great many different paragraphs, running in number from 144 to 216. When these goods arrived, the collector classified them under the last paragraph of this metal schedule, 216, which reads as follows:

"Manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, forty-five per centum *ad valorem.*"

That particular paragraph, as you will see from its phraseology, is a catch-all clause put at the foot of the metal schedule in order to cover

any manufactures of metal which may, by some deficient enumeration, or by some failure to enumerate, have escaped inclusion in one or other of the preceding paragraphs; and the rate of duty fixed by it is a high one in order that if an article which has thus escaped is one which should properly pay a high rate of duty, it will find itself in the catch-all clause paying at least the duties that it should. In view of the fact, however, that this paragraph is a catch-all clause, and with a high rate of duty affixed to it, no article should be included within it which, upon a fair and reasonable interpretation of the preceding paragraphs, may be found properly included in one or the other of them. It is the plaintiffs' contention in this case that their articles should not be included in this catch-all clause because, as they say, they are to be found specially provided for in paragraph 209, under this phraseology: "Pins, solid head or other, thirty per centum *ad valorem*." Now, laws imposing duties upon importations are intended for practical use and application by men engaged in commerce; and the denominations of merchandise under those laws are to be understood in a commercial sense. In other words, it is assumed that congress is fully conversant touching all the nomenclature of trade in every variety of merchandise dealt in in this country, and about which it legislates some tariff duty; and it is for that reason that the testimony of gentlemen in the trade is put before you in evidence in this case. You are to understand that congress, when it legislated about these articles, understood the trade and commerce in this country to be just exactly what you have heard it to be detailed to you from the witness chair; and in interpreting the words which have been used by congress, you are to give to them the same meaning which the trade and commerce of this country would have understood that they had in 1883, when congress used those words. Therefore, in determining whether these articles here are solid-head pins, or are other pins, (for the act, you will remember, reads "Pins, solid head or other,") in determining whether they are included in one or the other of those groups, you are to decide that point, enlightened by the information which you have received from witnesses here as to what was the understanding and nomenclature of trade and commerce in this country in 1883. In other words, suppose that at the close of the labors of the committee, and at the moment when the act was up for final passage, some one had raised one of these articles before congress and had said: "Have we not omitted this article?" What, if they had at that time turned to the trade and commerce of this country, would have been the answer? Would it have been answered: "No; because it is included in paragraph 209, which provides for solid-head pins or other pins?" If that would have been the answer made at that time, then we must assume that congress intended to cover these articles by the phrase it employed in paragraph 209. If, however, that were not the answer, if the trade, if consulted at that time, would have said: "No; these articles here are not known to us as 'pins,' either as solid pins, or as other pins, in our trade nomenclature,"—if that had been the answer which the trade and commerce of this country would have given in 1883 to such a question, then

you are to understand that congress did not include this article in paragraph 209. The question, as you see, is wholly and entirely one of fact. It rests with you to determine whether the phrase "pins, solid head or other" was, in 1883, understood in trade in this country as covering articles like these which the plaintiffs have imported. If it was so understood, your verdict will be for the plaintiffs; if it was not so understood, then your verdict must be for the defendant. The jury are entitled to consider the interest of any of the plaintiffs' witnesses, or of the firms with which such witnesses may be connected as importers of any of the articles involved in this suit, in the classification of such articles for duty, as bearing upon the testimony of such witnesses as to the trade designation of the articles in question. And I will add, generally, that any interest which any witness may have you are of course entitled to take into consideration in weighing his testimony.

*Mr. Van Rensselaer.* If your honor will permit me, there is one request which I did not put in writing, and which I will state to your honor verbally. I request your honor to charge that, in considering trade designation, the jury should take into consideration not only the trade as represented by the importers, but also trade as represented by the manufacturers of and dealers in domestic articles.

*The Court.* The trade and commerce of this country is the trade which buys and sells the particular article, whether it comes from abroad or is made here; and the trade and commerce which makes a designation is the trade and commerce between individuals where the buyer and seller are both engaged in that as their business, not where an individual retails to a consumer, but where both the parties to the transaction are trade men. That being so, it is immaterial whether the goods which they buy and sell are made abroad or made here. It is the whole trade and commerce in this country, wherever the goods it handles are made, which is to be considered.

*Mr. Van Rensselaer.* I would like to make a motion, and to ask for your honor's ruling thereon in connection with my first request to charge, that is, that the clause "Pins, solid head or other" in the statute must be understood by the jury to mean only such pins, solid head or other headed, as were known as such in trade and commerce at the time of the passage of the tariff act of 1883. I move your honor to direct the jury to find a verdict for the defendant as to the article "safety pin" on the ground that, in addition to its not being included in the general term "pins," it is an article which all the testimony shows has no head at all. I claim the construction of the statute to be "pins, solid head or other headed;" there being no comma after "solid-head," it means "solid headed or other headed." And on that ground I move your honor to direct a verdict in favor of the defendent as to the safety pins.

*The Court.* I shall deny that motion.

*Mr. Van Rensselaer.* Your honor will give me the benefit of an exception.

The jury thereupon rendered a verdict in favor of the plaintiffs.